HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BIG FISH GAMES, INC., <br><br> Defendant. | CASE NO. C17-1183 RAJ <br><br> ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Big Fish Games, Inc.'s ("Big Fish") Motion to Dismiss. Dkt. # 22. Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. ("Uniloc"), oppose the Motion. Dkt. # 52. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 22.

## II. BACKGROUND

Uniloc alleges that Defendant has infringed and is continuing to infringe one or more claims of U.S. Patent No. 6,110,228 ("the '228 Patent") and U.S. Patent No. 6,564,229 ("the '229 Patent"), by making, using, importing, offering for sale and/or selling the Big Fish Games portal, which allows remote users to install upgrades to Big Fish Games, and by instructing its customers to infringe on the patents through training videos, demonstrations, brochures, installation and/or user guides. Dkt. # 1 ¶¶ 16, 18, 34, 36.

Uniloc asserts two patents in this lawsuit: the '228 Patent which is entitled, "Method and Apparatus for Software Maintenance at Remote Nodes," and the '229 Patent, which is entitled "System and Method for Pausing and Resuming Move/Copy Operations." Dkt. # 1 Exs. A, B. Both patents involve processes within data processing systems. *Id*. The '228 Patent purports to improve on prior art by providing a common method of applying software fixes to remote locations across operating systems and program products in distributed data processing systems. Dkt. # 1 Ex. A. Pursuant to this method, a central software maintenance facility operates with a computer interface through which a customer at a remote location can request service and receive updated executable code back from the facility. *Id*. The customer interface provides a "front end" that covers different software platforms and allows a customer to specify a range of operations, including service research, requesting service, applying service, providing program fixes, and installing product or fixes at the remote location. The application of the service is done at the central facility. *Id*.

The '229 Patent purports to improve on prior art by providing a method and system for pausing move or copy operations in order to provide computing resources to other system operations within a data processing system. *Id*. By allowing a user to pause the move or copy operation, the information is retained so that the operation can be resumed at a later time. *Id*. This releases computing and network resources utilized by the operation while preserving the progress of the operation. *Id*.

### III. LEGAL STANDARD

#### A. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v.*

*Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. DISCUSSION

Big Fish argues that the Complaint fails to state a claim under Rule 12(b)(6) because the patents Uniloc asserts claim patent-ineligible concepts under 35 U.S.C. § 101.

### A. Patent-Ineligibility

Courts may consider patent eligibility issues on the pleadings and prior to discovery or claim construction. While it is often necessary to resolve claim construction disputes prior to a § 101 analysis in order to gain a full understanding of the claimed subject matter, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The "words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed.Cir. 2005). Where, as here, the basic character of the claims can be understood on their face for the purposes of the § 101 analysis, patentability can be examined at the pleading stage. *Bancorp*, 687 F.3d at 1274; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1349 (Fed. Cir. 2014)*; see also Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 WL 5041460 (Fed. Cir. Nov. 3, 2017).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers a new and useful process, machine, manufacture, or composition of matter, or any new and

useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).

The Supreme Court has established a "two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The first step is to determine whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Id.* To distinguish claims that are directed to abstract ideas from those that merely involve abstract ideas, courts look to "the 'focus' of the claims" and "their 'character as a whole.'" *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). If the claim is directed to a patent-ineligible concept, the court examines the claim limitations to determine whether they furnish an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. *Alice*, 134 S. Ct. at 2355. The second step of this framework is a "search for . . . an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

**B. Failure to State a Claim**

    a. *The '229 Patent*

        1. <u>Patent-Ineligible Concept</u>

Where, as here, the claims at issue are directed toward computer-related technology, the first step in the *Alice* inquiry "asks whether the focus of the claims is on

the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). In *Enfish*, the patents were specifically directed to a self-referential table for a computer database rather than simply focusing on the individual functions performed by that self-referential table, i.e. storing, organizing, and retrieving memory in a logical table. The Federal Circuit Court found that the claims at issue were directed to a "specific improvement to the way computers operate" and not "simply adding conventional computer components to well-known business practices." *Id.* at 1338.

The '229 Patent claims a "method and system of moving or copying data within a data processing system." Dkt. # 1 Ex. B. When the operation is suspended, "information regarding the copy operation is retained so that the operation can be resumed at a later time." Independent Claim 1 of the '229 patent claims:

> A method for copying data from a source file to a target file on a computer system, said method comprising:
>
> reading a first data portion from the source file;
>
> writing the first data portion to the target file;
>
> pausing the copying in response to a user requesting a pause operation from a user interface, wherein the computer system is available for other processing operations following the pausing;
>
> reading a second data portion from the source file in response to the user requesting a resume operation; and
>
> writing the second data portion to the target file.

Big Fish represents that Independent Claim 1 is representative of Independent Claim 10 and Independent Claim 16. Dkt. # 22 at 15. Dependent Claims 2-9, 11-15, and 16-19 impose further limitations on how the data is stored or organized, how the operation is paused, how the data is transmitted, and the type of computer system and computer program product that can execute the method steps. Dkt. # 1 Ex. B.

Uniloc argues that the asserted claims of the '229 Patent are not drawn to an abstract idea because they improve the functioning of a computer, citing to *Alice* to support its argument. However, the holding in *Alice* does not create a blanket rule that all claims that improve the functioning of the computer itself are patent eligible, instead, the Supreme Court suggested that such claims "might not succumb to the abstract idea exception." *Enfish*, 822 F.3d at 1335. At the first step in the *Alice* inquiry, the Court must consider whether the "plain focus of the claims is on an improvement to computer functionality itself." *Id*. at 1336. Uniloc argues that the asserted claims of the '229 Patent improve the functioning of the computer by allowing computer and network resources to be freed when the move/copy operation is paused and by preventing duplicative action by retaining the data that has already been copied or moved. While the method asserted could arguably improve the functioning of a computer, the asserted improvement is not the focus of these claims. Unlike the claims in *Enfish*, which were directed to a means for configuring computer memory, the claims in the '229 Patent are directed to a method of copying and moving data; the improvement in computer function is a bi-product of the method, not its goal.

Uniloc also cites to the holding in *Synchronoss Techs., Inc. v. Dropbox Inc.*, 226 F. Supp. 3d 1000, 1002 (N.D. Cal. 2016), to support its argument that the claims in the '229 Patent are not directed toward an abstract idea. In *Synchronoss*, the claims at issue were directed on their face to a specific improvement to computer functionality, a more efficient mechanism for synchronizing data between systems connected to a network. While an aspect of that mechanism involved an update that circumvented the need to recopy all data, similar to the claims at issue here, this similarity does not make the claims analogous. Here, the claims are directed at the abstract concept of pausing in the middle of copying information without deleting the progress already made and simply continuing to copy the information after the pause ends. This would be more accurately described as "simply adding conventional computer components to well-known business practices." *Enfish*, 822 F.3d at 1338.

Independent Claim 1 is directed toward to the concept of copying information from one location to another, pausing the copying of information so that other tasks may be performed, and resuming the copying of that information. Nothing in the Dependent Claims alter the nature of the concepts claimed. Limiting how the data is stored or organized, how the operation is paused, how the data is transmitted, or the type of computer system and computer program product that can execute the method steps merely changes the implementation of the abstract idea claimed.

2. Inventive Concept

As the claims in the '229 patent are directed to a patent-ineligible concept, the Court must now examine the claim limitations to determine whether they furnish an

"inventive concept". *Alice*, 134 S. Ct. at 2355. "Claims that 'amount to nothing significantly more than an instruction to apply [an] abstract idea ... using some unspecified, generic computer' and in which 'each step does no more than require a generic computer to perform generic computer functions' do not make an abstract idea patent-eligible." *Intellectual Ventures I LLC*, 838 F.3d at 1315 (quoting *Alice*, 134 S.Ct. at 2359–60). Further, claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). "An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).

Uniloc argues that, like the claims in *Bascom*, the claims of the '229 Patent recite an inventive concept because they recite a "particular and innovative arrangement of elements as a technical improvement over previous methods or processes." Dkt. # 52 at 13. Specifically, Uniloc points to the manner in which the claim dictates how the "pause" in the move/copy operation should occur. Independent Claim 1 recites reading a portion of data from a source file, reading that portion to the target file, and then pausing the copying in response to a user request. After the operation is resumed, the second portion of the data is read and written. Dkt. # 1 Ex. B. Uniloc fails to show how the specific arrangement of steps leading to the pause in the move/copy operation are inventive or different from prior art approaches to pausing move/copy operations. As

noted by Big Fish, in every copying operation, information must first be read before it written or copied. A "first portion" of information is read and written before a "second portion" of information can be read and written. Specifying that the data to be copied or moved be "portioned" is not sufficiently transformative as to change the claim into more than requiring a generic computer to perform generic computer functions. Therefore, as the '229 Patent claims are directed to a patent-ineligible abstract idea, Defendant's Motion to Dismiss is **GRANTED** as to the '229 Patent.

    b. *The '228 Patent*

        1. <u>Patent-Ineligible Concept</u>

The '228 Patent claims a "method of applying service to a computer program that is to be executed at a remote location connected to a central computer site of a computer network." Dkt. # 1 Ex. A. This method centralizes service of repairs and upgrades for customers at remote locations. *Id*. Independent Claim 1 of the '228 patent claims:

> A method of applying service to a computer program that is to be executed at a remote location connected to a central computer site of a computer network, the method comprising the steps of:
>
> > interactively receiving a request for a computer program service from a customer at a remote location interface with optional service incorporation instructions of the remote location customer;
> >
> > providing the received request for service over the computer network to a service facility at the central computer site;
> >
> > determining the components of the requested service at the central computer site; and
> >
> > providing the results of the requested service over the computer network back to the customer at the remote location interface.

Big Fish represents that Independent Claim 1 of the '228 Patent is subject to the same arguments and it representative of the other independent claims. Independent Claims 18 and 47 recite the same limitations as Independent Claim 1 in a "computer network system" and using a "program storage device readable by a machine at a central computer site." Dkt. # 1 Ex. A.

Big Fish argues that the '228 Patent claims the abstract idea of providing customized service to customers at a central site, analogizing the method claimed to the provision of repair services at a car service center. Dkt. # 22 at 10. Uniloc argues that the Patent does not claim an abstract idea because it does not merely recite a method for providing customers service at a central site, it recites a method for providing customers individualized service remotely over a computer network. Therefore, the method addresses a challenge specific to computer technology. However, Independent Claim 1 appears to simply recite steps for providing service to a customer: 1) receiving a request for a service from a customer with optional additional customer-specific instructions; 2) relaying the request to a service facility; 3) determining the components needed for the requested service; and 4) providing the service to the customer. While an aspect of this provision of service is the fact that it occurs remotely through use of a computer, and the service is the furnishing of executable code, it is still at base a method of providing customized service to customers from a central site. This is a regular business practice that is simply implemented by a computer. The dependent claims of the '228 Patent are equally directed to the same abstract idea, providing further limitations related to providing service to the customers, i.e. presenting a customer with a report of a product's

service history, providing service at an alternative site connected to the central site ("slave site"), or providing a menu of service options to the customer.

Uniloc further argues that the '228 Patent is not directed to an abstract idea because it discloses technical improvements specific to the way central computers provide software updates to remote customer locations. Specifically, that it claims a method of providing service that is more efficient than previous methods because service research and application of service are performed at the central site. Dkt. # 1 Ex. A. The specific update to the program (or the product), instead of a new version of the entire program, is sent to the remote location from the central site. This prevents remote locations from having to maintain source code copies of whole programs. *Id*. However, merely improving the efficiency of the abstract idea of providing customized service from a central site is the equivalent of "relying on a computer to perform routine tasks more quickly or more accurately," which the Federal Circuit has found is insufficient to render a claim patent eligible. *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1363 (Fed. Cir. 2015); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). Uniloc provides no convincing argument that the claims are directed to an actual technological improvement and not merely an improvement in efficiency or speed.

2. <u>Inventive Concept</u>

Similar to its argument with regards to the claims of the '229 Patent, Uniloc argues that the claims of the '228 Patent recite an inventive concept because they recite a "particular arrangement of elements as a technical improvement over previous methods

or processes." Dkt. # 52 at 20. However, Uniloc provides almost no further explanation or argument to explain that contention, merely stating that "the claims are significantly more than the theoretical abstract idea and the ordered combination of the claim limitations transform into a particular, practical application of that theoretical idea." *Id*. Uniloc further states that the elements recited in Independent Claim 1 include limitations that are "beyond what is well understood and conventional in the software support in distributed systems," specifically, "software maintenance at remote nodes using facilities of a central site." Uniloc provides no further explanation as to how the elements of the claims at issue do more than implement the abstract idea and transform it into "significantly more," or how the use of a central site for software maintenance is an inventive concept. As the '228 Patent claims an abstract idea and lacks an "inventive concept" sufficient to transform the claimed subject matter into a patent-eligible application of that idea, Defendant's Motion to Dismiss is **GRANTED** as to the '228 Patent.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 22.

Dated this 19th day of June, 2018.

_____
The Honorable Richard A. Jones
United States District Judge